Good morning, your honors. May it please the court, I'm Victor Haltom, and I'm appearing on behalf of Appellant Roberto Rios Vizcarra. And this is Eric Weaver. He is appearing on behalf of the co-appellant, Jaime Rios Vizcarra. Most lawyers don't argue two cases in their lifetime in front of the Ninth Circuit. You do two in a week, huh? Two, yeah. It's just the same panel just yesterday. Our proposal is for me, I'm going to address principally the issue concerning the district court's striking of the testimony of the witness, Mr. Perkett. And I was proposing to take 10 minutes, then Mr. Weaver was going to take 5 minutes, and we'd like to reserve an aggregate of 5 minutes for rebuttal. Would you set it at 10 and 5, please? That's acceptable. Thank you, counsel. The testimony that the district court struck in this case was plainly favorable testimony to the defense. It was flat-out exculpatory testimony. And the situation in which this issue unfolded was unusual, to say the least. As I indicated in my briefing, this witness was a cooperating or had been a cooperating witness with the government. He was the third. I don't know if it's all that exculpatory. I mean, you've got a witness who had been a cooperating witness, and now he says, I don't remember a thing. I don't know those guys. I don't recognize anyone in the courtroom. I don't remember anything. Most jurors would probably draw an inference from that, not that the defendants were innocent, but that the defendants had communicated a threat. Well, certainly that's a possibility, Your Honor. Perkett was with them down in Mexico, wasn't he? He was. And he testified fully and completely at an earlier trial of one of their colleagues, right? That's correct. And I don't know the case. He gets on the stand in this trial, and all of a sudden he doesn't recognize Jaime or Roberto, and he doesn't remember anything about Mexico. What's wrong with the judge saying, get out of here? Well, first, let me – I'll answer your question, but I'd like to address – I don't know whether that transcript that the government submitted as a supplemental excerpt of record is properly before this court. It's certainly not part of the record on appeal within the meaning of Federal Rules of Appellate Procedure 10, because it's a transcript from another case that wasn't introduced here. There's certainly – the jury, when they hear this man getting up on the stand, they can certainly infer that these two defendants threatened him, and that's why he has taken the position, even though I don't know who they are or I don't recognize them. And this is something right out of an Elmore Leonard novel, isn't it? I don't know. He's down there. He's involved in all of the transactions. He gets a deal. He testifies. But then when it comes to the brothers, never heard of them, don't know what you're talking about. I've had a case of complete amnesia. Right. And it's – you all, as a court, can say that appears to us not to be credible. This man must be lying. Well, the question is, did the trial court use its discretion in tossing this entire testimony? Correct. And there we have to weigh two competing interests. Is this exculpatory relevant evidence, which the defense is entitled to have the jury entertain and consider in its deliberations, versus what to do with a situation where a witness gets up on the stand, answers quite a few questions, and then flams up, says, I'm not answering any further questions? Yeah. This is not a situation where it appears that there would have been some reasonable cross-examination. I mean, if he hadn't refused to answer further questions and had simply gotten on the stand and said, I don't know these brothers, I've never seen them before, I was never in Mexico, and then the government was able to get up and cross-examine and say, did you – you did testify, you had a deal, and here's what you said before. But that couldn't occur because he wouldn't answer further questions, right? Well, it was the government's witness. So all we have is government's direct here. And I think that – Well, the government couldn't even have him declare a hostile witness and proceed with cross-examination on direct, which the rules permit, because he clammed up. Well, the government did have him declared very early on in his testimony a hostile witness. But it got to a point where he said, I'm not going to tell you the time of day. You can ask me all the questions you want. I'm not going to tell you no words. Right? Right. I'm just not going to refuse. He has a lawyer there who Ms. Grad and I both know who advises the court. Look, I've talked to this gentleman about his Fifth Amendment rights. I've talked to him about the possibility of being held in contempt. And I don't – I, as his attorney, don't think he has any Fifth Amendment rights. No privilege. Let me follow up on something Judge Hawkins brought out. Cases are not uncommon where somebody testifies on direct, and then he simply refuses to answer questions on cross, and the judge strikes the witness's testimony. That's usually where you get into, well, should he have stricken the whole thing? Should he have let part of it in? In this one, it's a little different twist. He starts testifying on direct, and then he becomes evasive, uncooperative, and refuses to answer questions on direct once he's declared a hostile witness. I'm wondering, number one, why – I'm not aware of any cases that were cited in the briefs that are exactly analogous factually, where the witness decides to clam up during the direct. But I'm thinking, why shouldn't we just apply the cases that are used where the witness refuses to answer questions on cross and say, in this case, he refused to answer questions and was reasonably judged to be refusing, and that they – everything he said was not collateral. It went to the heart of things. The answering of further questions was necessary to allow fair development of the testimony, so there was no abuse of discretion in striking the testimony. Is there any case to the contrary? And if not, why shouldn't that be the conclusion? Well, I think that your question pertains to the Montgomery case that's cited in the government's brief, and that's a case where the defendant himself is on the stand. He's proceeding with an entrapment defense, and the government on cross asks him, who's your source, and he refuses to answer. I think that's a little different situation than we have here, because in that case, the district court judge felt, well, with an entrapment defense, questions concerning his source go directly to predisposition, and the basis for an entrapment defense. Here we don't have that. We don't have the defendant up on the stand. We have a witness. We have a witness who is giving testimony, which at least a jury could if they find him to be credible. It has to be deemed exculpatory, because it's particularly exculpatory to Roberto, my client, because he's saying that, yes, I, Jack Perkett, was down in Mexico at the scene where the vehicle was loaded up with the drugs, and Roberto was not even there. Counsel, just in terms of our review of this issue, I have a question for you about our standard of review, our extent of review. If I understand the record correctly, there was no objection made below, so we're reviewing for plain error. Is that correct? And do you also agree that ordinarily we would be reviewing for an abuse of discretion for the decision to strike a witness's testimony? Yes, and the Montgomery case and the cases that I've cited in my brief do point that out, that the applicable standard is abuse of discretion. So when you multiply that out, that's a pretty high hurdle. It's an abuse of discretion to make it a plain error holding in your favor, right? Right. And so the reason, if your next question is why should you do that, the factor, the key factor that was not addressed below, and it wasn't considered by the district court, and it certainly wasn't raised by defense counsel, was this evidence has the potential to be genuinely exculpatory evidence for the reasons that I just explained. If this man is deemed credible by the jury, and the jury obviously gets to make that determination, then it undermines the prosecution's case completely. The district court, in its analysis, and its training. How do we know it undermines it? We don't know what he would have said, because he refused to testify. Well, he certainly got, I don't think there was anything really more for him to testify to than I was present at the scene down in Mexico, and I don't know these two gentlemen sitting right here. They weren't there. I don't recognize them. He described being down at the scene where the vehicle gets loaded up with the drugs, and not, and the Rios Vizcarro brothers not being involved in that. That's plainly exculpatory. It contradicts the other government witnesses. Certainly the jury would have been called upon to make a credibility assessment in that regard, but just facially, if that testimony was true, is the key factor, and it's a Chambers v. Mississippi type of issue. It's exculpatory defense evidence that was put before the jury, but then taken back away from the jury by the district court's order striking the testimony. I think that under these circumstances, the district court should have done something other than just altogether striking the testimony. The district court could have given the jury an instruction that this witness is refusing to answer further questions. Once he did, refused to answer further questions, and that I, the district court, find he does not have a legal basis for doing so. He doesn't have a Fifth Amendment privilege because the government has conferred immunity upon him. So, unless there's further questions, then I'll reserve the rest of my time for rebuttal. Thank you, counsel. What was it, 10-5 and 5? Set the clock for 5 now. Counsel? Good morning, Your Honors. I'm Eric Weaver, appearing on behalf of Jaime Rios Vizcarra. I don't think there's anything The clerk, evidently, is unable to set the clock for 5. Okay, I'll keep an eye on it. I don't think there's anything I can add to the Ameline Booker discussion that the court hasn't already heard. So the issue that I want to discuss briefly is the refusal to properly consider Jaime's request for new counsel. I think that there's three points to look at on that particular issue. First, the court stated before I didn't get what the problem was. It sounded like somebody's mother. You never call, you never visit. But it didn't sound like anything concrete. Well, I think that the reason that it is concrete is because the counsel confirmed that there was no communication between him and the client. It seems to me, at that point, it was incumbent on the court to ask the client why there wasn't. And the lawyer advised the court that he had communicated quite adequately and fully. Well, but the client contradicted that. He says he never talks to me. Did he take the client's word over the lawyer's? No, Your Honor, but the lawyer also said, Mr. Viscar doesn't communicate with me. I think it was incumbent on the court to find out why that was. It seems to me that if the attorney himself is admitting that the client isn't communicating with him, that that's an indication that there may be a problem with a relationship that bears some further scrutiny by the court. But it seems to me that on the facts of this case, because the court was so sure that this was a manipulation, it didn't ask the additional questions to find out why Mr. Viscar wasn't communicating with his lawyer. Perhaps he didn't trust him. Perhaps there were prior communications that had broken down the relationship and he felt it wasn't in his interest. Maybe he thought the attorney was working against his interest. It's a complicated case, but the judge never asked those questions. So we have a blank record where the client says he's not talking to me. The attorney says the client's not talking to me. There's clearly no communication going on, but the court didn't make an effort to discover why there was no communication going on. The trial court's assumption was that Jaime was attempting to manipulate the system somehow. That, to me, doesn't seem credible. How can a client effectively manipulate the system if he's not working with his attorney? By blowing up the trial date every time they're coming up to trial so that the government's witnesses eventually fade away. I suppose, but all the witnesses are in custody, so where are they going to go? The government agents aren't going to go away. The co-defendants are in custody and he's in custody. He's six feet under. I personally don't have any experience with how difficult... I don't think that would happen if you get the trial dates delayed. Well, I suppose, but I don't see how he could get it continued for 20 years under any circumstances. And it seems to me that there's maybe something more going on that the court didn't bother to consider. I just think that a few more questions by the court were required in order to adequately consider this issue, and I think that the fact that the court was working on the supposition that this was just a manipulation without asking two or three more questions of Mr. Rios-Vizcarra to find out... Well, wasn't there at least some suggestion in the transcript that that may have been the case? For example, I believe, didn't he say, well, I don't speak much English? And then the lawyer gets up and says, well, that's not a problem because I speak Spanish. It seemed like he was making excuses, so why couldn't the court take that into account? Well, one of the complaints he had is that there were 500 pages-plus of discovery that was all in English, and he couldn't read it. The lawyer said that he went over it all with him. He said he summarized it with him, but you can see how the defendant, from his point of view, would want some more detailed explanation of what's going on and more time to consider it. A lot of the Jenks material was only disclosed two days earlier, as the government made the point that that's okay within the statute, but the client doesn't speak English. It'll take him a long time to wade through the Jenks material to figure out how it affects him personally. Jenks Act says it doesn't have to be, that the prior statements of the witnesses don't have to be disclosed until after they've testified. Judges often allow a recess over the lunch hour, or they break early for lunch, or they break early for the evening recess, and that's usually about it. No, I understand that, but that wasn't explained to Mr. Rios-Vizcarra either. What we have is a record of a client saying, my attorney doesn't communicate with me, the attorney saying, my client doesn't communicate with me, and the judge not investigating why that's the case. Unless the Court has further questions, I'll save our remaining minutes for rebuttal. Thank you, Counsel. Good morning. May it please the Court, my name is Mary Grabb, and I'm an assistant U.S. Attorney in Sacramento. Addressing the issue of striking Mr. Burkett's testimony, in fact, Your Honor, the defense counsel that were present in the courtroom asked for a mistrial when Mr. Burkett refused to testify further, and their position was that his testimony and the way it came out was very damaging to their case. So the judge, in this sense, the judge put a whipsaw situation here. What was the district judge to do? Counsel was asking for a mistrial because the testimony was so damaging, and the reason they suggested, Your Honor, was precisely the reason that you, Judge Kleinfeld, suggested, that it looked as though the witness was cooperative, there had been a suggestion of threats made, and that the threats had come from their clients, and that's why the witness was refusing to testify. And so counsel were asking for a remedy because they believed that the testimony was damaging. No one in that courtroom who saw that testimony, most importantly the district judge, thought that testimony was exculpatory. It was obviously, it was manipulative, and that really goes to the issue of the abuse of discretion. The judge was there to observe the witness's demeanor, to see how the testimony came out, and he made the decision that the best course was basically to strike the testimony. We had cyborg ---- Was there any objection by the defendants to the judge's decision to strike the testimony? There was not, Your Honor. In fact, when they asked for a mistrial, I suggested striking the testimony as an intermediate point, so that there wouldn't be, you know, so that counsel could argue that the jury was supposed to just ignore that testimony. They were arguing it was damaging, and so really the judge, I think, what was he supposed to do? Every time you get a witness on the stand that spins a prosecutor, you can't get a mistrial. And so he was trying to fashion an intermediate plan, I guess, or an intermediate remedy here, and so I suggested that he strike the testimony, and that's, in fact, what happened here, without objection. Just had the judge granted the mistrial, there would have been no obligation on the part of the prosecutor to try to present this witness the second time around, true? That's correct. So essentially the defendants are exactly where they would have been had there been a mistrial and a fresh trial. I think that's correct, Your Honor. I mean, obviously, if the government had any indication when we met with the witness prior that the witness didn't want to testify, we would have never called him, and that just would have been the end of it, but there was no indication until he got up on the stand that day that something had occurred very shortly before that made him change his mind about wanting to testify. So I agree with the court. They would have been in the same position. And if he were willing and exculpatory, there was nothing to prevent the defendants from calling him. Absolutely. You know, they could have met with him. This was in the middle of trial. There was certainly time for them to meet with him again and to call him in their case in chief if they really believed he was an exculpatory witness. That's just not what the record shows, and I don't think that's why the trial judge decided to strike the testimony. I think on the issue of the continuance with the substitution of counsel, what had happened in this case and what the record showed is that a year before, these same defendants had come in complaining about their previous attorneys, and this trial judge had given them new counsel a year before. Six weeks before this case was to proceed to trial, there was a trial confirmation hearing. At that point, everyone said they were ready for trial. The defendants indicated their readiness to go to trial. There was absolutely no indication that the defendants had any objection or any problems with their attorneys. Mr. Jaime Vizcarra comes on October 3rd and indicates he wants a new attorney, and I agree with Judge Graber. I mean, there was a lot of reason for the district judge to believe it was a manipulation. Jaime Vizcarra's trial counsel, Gilbert Roque, was a fluent Spanish speaker. Mr. Vizcarra talked about how he didn't understand English, and that was a difficulty in which Mr. Roque correctly responded that he spoke Spanish fluently, had gone over all of the discovery, and that they were ready for trial. There just didn't seem to me to be any indication of any real objection. The cases indicate that the timeliness of a request for substitution of counsel is an issue. It's not dispositive. This certainly came very late in the game. The adequacy of the inquiry, I believe the judge made a more than adequate inquiry. You know, he went over what had proceeded in the case. He asked counsel, asked Mr. Vizcarra what had occurred, what was different, what had happened since the time of trial confirmation, and if anything, Jaime Vizcarra was vague in making any objection to what the problem with counsel was. So I think that, you know, he made an adequate inquiry. The third factor is the problem of communication, the degree of breakdown of communication. Mr. Roque indicated he had worked with many Spanish-speaking clients, had extensive experience, and that he felt that there was adequate communication between counsel, and that he had informed counsel, informed Mr. Vizcarra what the issues were for trial, had gone over the discovery with him, and was adequately prepared for trial. So I don't think that was much of an issue. Let me think. I guess on the Booker and the Fantan questions, I mean, this Court has, you know, been briefed extensively. I believe the Severino case, which is cited in the government's brief, the Ninth Circuit case really is dispositive as to whether there was any need for any arraignment or advisement. Clearly the defendant had notification of his prior conviction. Severino says, you know, it seems unusual that you're asking for an admonition for somebody who says they don't have notice. But, in fact, this defendant went through all of the post-trial proceedings. The pre-sentence report clearly indicated that there was going to be enhancement based on this prior conviction. At that point, the defendant never objected, never said there was any question that there had been a prior conviction. So that seems to me that Severino really is dispositive on that question. I think with respect to Jaime Vizcarra, the enhancement was based on the amount of drugs. Clearly there was a special verdict in the case that indicated it was more than 500 grams of methamphetamine and more than a kilogram of heroin. But more to the point, the only evidence of any drugs in the case were the drugs seized at the border. And in the excerpt of record, I included Exhibit 5, there was a testimony of the chemist. The chemist was absolutely clear on what the amount of drugs were, and there was really no dispute as to what the amount of drugs were. So for all intents and purposes, when the jury found them guilty of possession of more than 500 grams and more than a kilogram, they had to be finding them guilty of the transportation of the amount of drugs that were listed in Exhibit 5. And those were the drugs that were used to give the enhancement, to give Jaime Vizcarra a Level 34 enhancement versus the Level 32 enhancement. I had thought that the scheme was, Blakely says in a mandatory system where quantity can increase the amount of the allowable sentence, it has to be proved to a jury beyond a reasonable doubt. Booker said if the guidelines were such a system, then a jury determination would be necessary in the first of the opinions. I think it was a Stevens opinion. And then in the second of the opinions, I think it was a Breyer opinion, it says, but the guidelines are not that kind of system. So all we do is wait for Amoline to come down and then maybe remand to the district court to see if it wants to re-sentence under the guidelines as kind of a guideline system. I think that's kind of where we are, Your Honor. I do think this case is a little unusual in the fact that although you don't have a specific special verdict finding, there really is no other reasonable, I guess, inference to be drawn from the jury's conviction other than the fact that the amount of drugs involved in this conspiracy were the amount of drugs proven in Exhibit 5 and proven by the chemist. There's not an alternative possible. So I think in that system, but again, I guess now that the guidelines are advisory, Your Honor, I suppose the district judge in looking at all of the information might decide to give this defendant a lower sentence. Or higher. Yeah. That's true, too, Your Honor. Sometimes when you're a trial judge, your guidelines hold you down. It's certainly possible, Your Honor. They might be sorry that they get what they ask for. I don't have anything further if you don't have further questions. Thank you, Counsel. Thank you. Just briefly in rebuttal, Your Honors, I did file a 28J letter when the Shepard decision came down, and I believe that that is added into the mix here with respect to the Blakely Booker amyling question, particularly with respect to Mr. Roberto Rios Vizcarra's prior conviction and the nature of it. So I won't address it beyond that. I couldn't see why there was any procedural problem with the prior. It looks like it was fairly disclosed with plenty of time to say that wasn't me or raise any other objection, and you didn't. It was filed. There was no objection made to it by trial counsel. I don't dispute that. However, Shepard really changes this because there is nothing in the record about the nature of the underlying prior conviction that Roberto Rios Vizcarra suffered other than what is disclosed in the information, the 851 information that the government filed, which is that he received out of San Joaquin County a 120-day county jail sentence following a plea to health and safety sections 11378 and 11351. So I think that that squarely is controlled by Shepard. With respect to Shepard, the question before the court was what was the nature of his burglary prior. I don't remember exactly what factually the court was looking for, but the court ultimately concluded that there's only limited factual basis that can be used to determine the nature of a prior conviction. It can only be a judicial record. It can't be hearsay from a police report or hearsay from a probation report. And here we don't have any judicial record. We don't have the text or the transcript of Mr. Roberto Rios Vizcarra's plea in San Joaquin County. So what? You have the conviction. What else do we need? Well, we have an allegation that he suffered the conviction, and that's it. We have an allegation in the government's 851 information. I don't think that that is enough to cut it under Shepard. With respect to Jaime Rios Vizcarra, one point I did want to make on the request for substitution of counsel continuance issue was that and his lack of understanding of what was going on. The record confirms that there were problems with the headsets. And I think it's ER page 15, and that they were having difficulty following along. So that's just a point to add to the mix there. Then back to the exclusion or the striking of Mr. Perkett's testimony. The inference that could be drawn, that the reason he's doing what he's doing up on the stand is because he's been threatened by these two defendants and or some of their colleagues somehow from the Sacramento County Jail, that's an inference that I suppose could just be drawn by jurors if there were no testimony or questions on the subject. But really, on this record, the only reference to possible threats came from the leading questions that he was asked during the district court's declaration of him as a hostile witness. Do you agree or disagree with opposing counsel's assertion that there was a motion for mistrial made on the ground that things had gone awry with Perkett? I agree with it. And it was a motion for mistrial that was initially made by Counselor Jaime Rios Vizcarra and then joined by Okay, so your position at trial was that it was inculpatory, not exculpatory. What had happened? That it was a problem for your clients. That's why you wanted a mistrial or your predecessor in interest. I don't think that that is entirely accurate, because if you look at the motion for mistrial, and it's just about a page and a half, it's, look, Your Honor, what happened here has tainted the jury. And I think it's a fair inference of the articulation of the motion for mistrial that what counsel was complaining about is what I went on in my opening brief about. Look, Your Honor, the way you have handled this issue in front of this jury is to suggest to this jury that, look, the first two witnesses come on, cooperating witnesses, and go with the government's program. The third witness comes along and doesn't go along with the government's program, and everything blows up. You allow the government to treat him as a hostile witness. You allow the asking of leading questions. So why isn't the striking of his testimony the equivalent of granting the motion for mistrial, just saying to the jury, you know, ignore that blip that's gone. We'll just have a trial without this witness, which is what you would have gotten if the motion for mistrial had been granted. I don't disagree with that. However, his testimony, even if it was exculpatory. Well, then you were free to present it if it was exculpatory. If he was willing to testify, he could have testified for your client. In the defense case, in this case? I suppose he could have, but he had already testified. It was there, it was in the record, and it was stricken. I don't think that there's any reason to believe. I don't know if I was the attorney and I wanted that in and I had requested for the district court to keep it in, but the district court struck it. I think it would be futile for me to ask to put that witness back on. So, I mean, the bottom line, and I think, you know, if this case were reversed and retried and this witness invoked his Fifth Amendment privilege against self-incrimination, I think that his direct testimony from this trial should be able to come in as former testimony. It would be, again, urged as exculpatory evidence on behalf of the Rios Vizcarra brothers. I think I'm out of time unless there's additional questions. Thank you, counsel. United States v. Vizcarra is, Rios Vizcarra is submitted to your Equal Employment Opportunity Commission for this topic. A whole bunch of cases. I'm sure you want to divide up the time. Would the clerk please divide up the time? No, there's only one lawyer now. Are we down to one? Yes. Great. Thanks. Thank you.
judges: Kleinfeld, Hawkins, Graber